PEOPLE v UNDERWOOD

Docket No. 113751. Submitted March 14, 1990, at Detroit. Decided
August 6, 1990.

Lanford Underwood was convicted of second-degree murder fol-
lowing a jury trial in Detroit Recorder's Court and was sen-
tenced, Isidore B. Torres, J. Defendant appealed, arguing that
the trial court erred in refusing to admit into evidence the
confession of defendant's brother and in applying sentencing
guidelines enacted subsequent to the crime.

The Court of Appeals held:

1. The trial court did not abuse its discretion in refusing to
admit the brother's confession. The brother had an ulterior
motive, i.e., to protect his brother, in making his statement
exculpating the defendant, and there were no corroborating
circumstances to clearly indicate the trustworthiness of the
statement. A statement tending to expose the declarant to
criminal liability and offered to exculpate the accused is not
admissible unless corroborating circumstances clearly indicate
the trustworthiness of the statement.

2. The trial court properly applied the revised sentencing
guidelines. The revised guidelines became effective on October
1, 1988, and apply to sentences imposed after that date. Defen-
dant was sentenced on October 17, 1988.

Affirmed.

MICHAEL J. KELLY, J., dissented. He would hold that there
was enough corroborating evidence to require the admission of
defendant's brother's statement for appropriate assessment of
its weight by the trier of fact. He would reverse.

1. CRIMINAL LAW — EVIDENCE — HEARSAY — STATEMENT AGAINST
INTEREST.

A statement tending to expose the declarant to criminal liability
and offered to exculpate the accused is not admissible unless
corroborating circumstances clearly indicate the trustworthi-
ness of the statement (MRE 804[b][3]).

REFERENCES

Am Jur 2d, Constitutional Law §§ 641-643; Evidence §§ 620-622.
See the Index to Annotations under Confessions and Admissions;
Corroboration; Ex Post Facto Laws; Sentence and Punishment.

2. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES.

The second edition of the sentencing guidelines, effective October 1, 1988, must be used when imposing a sentence after that date for any offense included in the guidelines, regardless of whether the offense at issue occurred prior to October 1, 1988.

3. CRIMINAL LAW — CONSTITUTIONAL LAW — EX POST FACTO CLAUSE — SENTENCING GUIDELINES.

Retroactive application of the revised sentencing guidelines does not violate the constitutional prohibition against ex post facto laws.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training and Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

*Charles Burke,* for defendant on appeal.

Before: REILLY, P.J., and MICHAEL J. KELLY and H. E. DEMING,* JJ.

REILLY, P.J. Defendant appeals as of right from his conviction by a jury of second-degree murder, MCL 750.317; MSA 28.549. He was sentenced to a term of fifteen to thirty years of imprisonment. Defendant contends that the trial court erred in refusing to admit into evidence the confession of defendant's brother and in applying sentencing guidelines enacted subsequent to the crime. We affirm.

According to the prosecution witnesses, in the early morning hours of January 24, 1988, Lester Horton, the victim, chased Demetrius Underwood, defendant's deaf brother, onto defendant Underwood's porch. Defendant let Demetrius inside. Hor-

* Former circuit judge, sitting on the Court of Appeals by assignment.

ton, who was carrying a stick, pushed his way into the house following Demetrius. Defendant forced Horton back out of the door, across the porch and over the railing. Demetrius came outside and began to beat Horton, and at some point defendant also beat him. Demetrius struck Horton on the head several times with a stick. After Horton stopped screaming and lost consciousness, defendant and Demetrius dragged his body away from their house and placed it in a dumpster. Horton died of multiple injuries to the head and hypothermia. According to the pathologist, the head injuries were not fatal, but would have rendered Horton unconscious and unable to seek medical attention.

Defendant contends that the trial court erred in refusing to admit Demetrius' confession into evidence. In his statement to the police, Demetrius Underwood admitted that he and three of his friends struck Horton. According to the statement, defendant was not involved in hurting the victim, but was trying to stop the fight. At defendant's trial, Demetrius asserted his Fifth Amendment right against self-incrimination and refused to testify.

The decision whether to admit or exclude evidence is within the sound discretion of the trial court, and it will not be disturbed on appeal absent an abuse of that discretion. *People v Watkins,* 176 Mich App 428, 430; 440 NW2d 36 (1989). An abuse of discretion will be found only if an unprejudiced person, considering the facts on which a trial court acted, would say that there was no justification or excuse for the ruling made. *People v Romano,* 181 Mich App 204, 218; 448 NW2d 795 (1989); *People v Hamm,* 100 Mich App 429, 438; 298 NW2d 896 (1980), lv den 411 Mich 888 (1981).

MRE 804(b)(3) provides:

> *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> * * *
>
> (3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable person in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

To be admissible under this exception to the hearsay rule, a statement must be truly against the declarant's penal interest. *People v Conte,* 152 Mich App 8, 11; 391 NW2d 763 (1986); *People v Williams,* 136 Mich App 682, 686; 357 NW2d 741 (1984). In determining whether a statement is against the declarant's penal interest, the trial court must examine it in the context in which it was made.

> If it appears that the declarant had some other motive in making the statement, whether self-interest or otherwise, the declaration should be excluded since it lacks the requisite indicia of reliability that underlies the exception. *Williams, supra; People v Blankenship,* 108 Mich App 794; 310 NW2d 880 (1981), lv den 412 Mich 857 (1981). [*Conte, supra* at 12.]

While Demetrius' statement that he struck Hor-

ton was against his penal interest, his statement denying defendant's involvement was not. In addition, Demetrius' motive in denying his brother's involvement was suspect. He placed blame on three other men, whose presence at the scene of the beating was never mentioned by any of the other witnesses at trial, including defendant. The trial court reasonably concluded that Demetrius had an ulterior motive, in this case to protect his brother, in making his statement exculpating the defendant.

Furthermore, there were no corroborating circumstances to "clearly indicate the trustworthiness of the statement." MRE 804(b)(3); *People v Miller*, 141 Mich App 637, 642; 367 NW2d 892 (1985).[1] *People v Sanders*, 163 Mich App 606, 610; 415 NW2d 218 (1987). In seeking to admit Demetrius' statement, defense counsel argued that the physical evidence and the testimony of Valentino Gibson constituted sufficient corroboration. However, the physical evidence did not exclude defendant's involvement in the beating and disposal of the unconscious victim, and Gibson testified that defendant admitted beating Horton and stomping on his face. Defendant admitted at trial, contrary to Demetrius' statement, that he helped his brother put the body behind a dumpster. Although defendant argues on appeal that none of the eyewitnesses testified to his striking Horton, Melvin Peoples testified both that he saw defendant beating Horton with his fists at some point during the fight and that he heard defendant suggest, "Let's put him in the dumpster." Under these circumstances, we cannot find that the trial court abused its discretion in refusing to admit Demetrius' confession.

---

[1] The requirement of corroborating circumstances is a departure from prior Michigan law. *Blankenship, supra* at 797, citing *People v Ernest Edwards*, 396 Mich 551, 565; 242 NW2d 739 (1976).

Defendant also claims that the trial court erred in applying the sentencing guidelines enacted subsequent to his commission of the crime. The revised guidelines, which became effective on October 1, 1988, pursuant to Administrative Order No. 1988-4, 430 Mich ci, apply to sentences imposed after that date. *People v Ratowski,* 181 Mich App 361, 362-363; 448 NW2d 841 (1989); *People v Potts,* 181 Mich App 311, 313; 448 NW2d 820 (1989). Because defendant was sentenced on October 17, 1988, the trial court properly applied the revised guidelines. We are also persuaded that retroactive application of the revised guidelines does not violate the constitutional prohibition against ex post facto laws. See *Ratowski, supra* at 364; *People v Davis,* 181 Mich App 354, 358-360; 448 NW2d 842 (1989); *Potts, supra* at 314.

Affirmed.

H. E. DEMING, J., concurred.

MICHAEL J. KELLY, J. *(dissenting).* I respectfully dissent.

I do not think there is any question that the statement given by Demetrius Underwood was against his penal interest at the time it was given and qualifies for admission under MRE 804(b)(3). It certainly tended to subject him to criminal liability and would have been admissible without a preliminary showing of corroborating circumstances which would indicate trustworthiness but for that requirement enacted in the Michigan Rules of Evidence. See *People v Ernest Edwards,* 396 Mich 551; 242 NW2d 739 (1976). The question then is whether or not "corroborating circumstances clearly indicate the trustworthiness of the statement."

In *People v Miller,* 141 Mich App 637; 367

NW2d 892 (1985), this Court ruled that the defendant must show the corroborating circumstances. Similarly, in *People v Sanders,* 163 Mich App 606; 415 NW2d 218 (1987), we found no abuse of discretion in excluding a statement offered to exculpate the defendant where the defendant failed to establish the "trustworthiness" of the statement. Trustworthiness was equated with corroboration and we held:

> The only circumstance corroborating Nix's statement was the fact that the victim received a bullet wound to her lower back, suggesting that the bullet was fired from the back seat of the car, where Nix was sitting. However, the injury inflicted by the second bullet suggests the bullet was fired by defendant, from the driver's seat. Significantly, there was testimony from witnesses suggesting that the victim was shot by defendant as she hastily exited from the car. The victim testified that it was the defendant who had shot her. Under these circumstances, the trial judge did not abuse his discretion in excluding Nix's statement. [*Id.,* p 610.]

Obviously in *Sanders* there was *some* corroborating evidence. There is also some corroborating evidence here and I think the quantum is such as to require the admission of the statement for appropriate assessment of its weight by the trier of fact. I do not even examine the question of the propriety of shouldering on the defense the burden of proof of the trustworthiness of the statement. This question is not addressed by either party.

On the morning after the killing, Demetrius Underwood made a full statement to the police confessing to the crime. Demetrius, who is deaf, gave the statement through an interpreter. Demetrius said that Horton and another man attacked him that night, but that the second man left and

Horton continued to pursue him. Horton chased Demetrius to his friend Kevin's house. At Kevin's house, Demetrius, Kevin, and two other friends of Demetrius, who were also deaf, beat Horton with pieces of wood. Demetrius said he kicked Horton and beat him in the head with a shovel. Demetrius said that afterwards they threw him in the garbage. Demetrius said that Horton had always harassed him and two of his deaf friends and had twice beaten up one of his deaf friends. He explained, "[T]he man is nuts. That's why I had to kill him." In response to police questioning, Demetrius said that defendant was not around and did not do anything to Horton and that defendant tried to stop the fight.

The court held that Demetrius' confession was contrary to the other evidence in the case and refused to admit it on the ground that there were no corroborating circumstances to indicate its trustworthiness. The "other evidence" was given by defendant's mother, stepfather, and a cell mate. In ruling against the admission of the confession, the trial court necessarily assessed the credibility of those witnesses against the testimony of the defendant and completely discounted the three other persons named and referred to in the confession whose versions of the crime are neither accounted for nor explained in the record. Neither party addresses this glaring omission. Since these witnesses were inculpated, their unexplained absence cannot be weighed against the defendant.

Other indicia of trustworthiness must be weighed in favor of admission of the confession. First of all, Demetrius confessed the morning after the crime while unrepresented and in police custody. Though deaf, he was provided an interpreter and his statement was recorded and transcribed. His confession does give at least an arguably plau-

sible explanation of the circumstances of the crime and contains his own motive for killing the victim. I believe the trial court erred in excluding this important exculpatory evidence and that the error requires reversal.

I would reverse.